NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————————

No. 09-2811
———————————

CATHERINE M. LIEBEL,
(Widow of P.L.)
                                        Petitioner

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; DUNAMIS RESOURCES,
AMERICAN MINING INSURANCE COMPANY

———————————

ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD
(Claim No. GR180288245LW)
Administrative Law Judge: Honorable Richard A. Morgan
———————————

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2010
———————————

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, Circuit Judges

(Opinion Filed: October 29, 2010)

———————————

OPINION

GREENAWAY, JR., Circuit Judge

Catherine Liebel ("Liebel"), widow of deceased coal miner, Paul Liebel

("Mr. Liebel"), seeks a petition for review of an Order of the Benefits Review Board's

("Board" or "BRB") decision affirming the Administrative Law Judge's ("ALJ") decision

denying her claim for survivors' benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901–902, 921–925, 931–944 (1994). Liebel asserts that the ALJ lacked substantial evidence to credit the testimony of respondent's medical witness over the testimony of Liebel's medical witness. We disagree. For the following reasons, we deny the petition.

## I.  BACKGROUND

We write solely for the benefit of the parties and recount only the essential facts.

Mr. Liebel worked as a coal miner over a period of twenty-six years. He also had a significant history of cigarette smoking. After Mr. Liebel died in 2000, Liebel filed a claim for survivors' benefits under the BLBA. On August 14, 2007, following several denials of her claim for benefits during the administrative claims adjudication process and a denial of her modification request, ALJ Richard A. Morgan granted Liebel a formal hearing. After the hearing, the ALJ denied Liebel's claim.

The ALJ determined that "[t]he crux of this case rests on the relative weight [the ALJ] accord[s] to the conflicting medical opinions . . . ." (App. 18); see 20 C.F.R. § 410.414 (1997) (identifying the four means of establishing the presence of pneumoconiosis, including x-ray, autopsy/biopsy, presumption, and medical opinion).[1]

---

[1] Liebel concedes that the record lacks any documentary medical evidence demonstrating black lung disease or pneumoconiosis. (App. 13.) There was no radiographic evidence of pneumoconiosis; there was no autopsy conducted in this case; the lung biopsy did not reveal any scar reactions from coal dust; and the death certificate and other medical records did not mention pneumoconiosis. (Id.) Liebel admits that none of the statutory presumptions apply in this case. A miner is entitled to an irrebuttable presumption of total disability if the miner is diagnosed by x-rays, biopsies, or autopsies that meet certain

2

Medical witnesses for Liebel and Respondents, respectively Dr. Michael E. Wald and Dr. Gregory J. Fino, both agreed that Mr. Liebel died of lung cancer caused by cigarette smoke and that his coal employment did not cause his severe form of lung cancer. Both accepted the proposition that cigarette smoke and coal dust could have contributed to Mr. Liebel's underlying chronic obstructive pulmonary disease ("COPD") and that the progression of COPD could hasten a death primarily caused by lung cancer because it could weaken a miner's pulmonary reserve.

The physicians disagreed on one critical issue—whether Mr. Liebel's coal dust exposure, in fact, impacted his COPD. Dr. Wald indicated that he based his opinion on a review of the record, including Mr. Liebel's work history, testimony from Liebel and Mr. Liebel's step-daughter regarding Mr. Liebel's breathing problems, as well as, Dr. Fino's conflicting expert report. Based on this data, Dr. Wald opined that Mr. Liebel's exposure to coal dust during his coal mine employment contributed to the progression of his COPD. Dr. Wald stated at his deposition that "[Mr. Liebel] had chronic obstructive lung disease and that [the] condition was indeed aggravated by his occupational exposure." (App. 92.) Dr. Wald, upon hearing testimony from Mr. Liebel's family indicating that Mr. Liebel had chronic bronchitis, concluded that Mr. Liebel died of respiratory failure. Dr. Wald determined that Mr. Liebel had COPD and that Mr. Liebel succumbed to lung cancer sooner than expected because he was weakened by his COPD. (App. 89–93.)

standards; if the miner is diagnosed by other means that meet those same standards; or if a miner who died on or before March 1, 1978 meets certain standards. 20 C.F.R. §

3

Dr. Fino reached the opposite conclusion. Dr. Fino testified at deposition on two occasions and submitted two expert reports articulating his medical findings and his conclusion that Mr. Liebel's death was not hastened by pneumoconiosis. Dr. Fino stated that "[c]oal mine dust played absolutely no role in [Mr. Liebel's] death." (Id. at 16.) Dr. Fino reasoned that Mr. Liebel's coal dust exposure did not affect the progression of Mr. Liebel's COPD, and therefore, did not hasten Mr. Liebel's death. Specifically, Dr. Fino explained that Mr. Liebel died, when and how he did, because of the progression of his severe type of lung cancer—metastatic small cell carcinoma. He noted that, even if Mr. Liebel's COPD substantially contributed to Mr. Liebel's death, his conclusion would not change because Mr. Liebel's coal dust exposure did not clinically contribute to the COPD. In response to Dr. Wald's medical findings, Dr. Fino emphasized that respiratory failure was merely the manifestation of Mr. Liebel's passing.

The ALJ credited Dr. Fino's medical opinion over Dr. Wald's opinion. He stated that "Dr. Fino's opinion is better reasoned and documented and more consistent with the objective medical evidence, as well [as] the miner's employment, cigarette smoking, and medical histories." (Id. at 18.) In support of his conclusion, the ALJ noted that "[t]he record contains little, if any, clinical evidence to support Dr. Wald's conclusion that [Mr. Liebel's] death was hastened, albeit indirectly, by coal mine dust exposure (i.e., legal pneumoconiosis)." (Id. at 20.) The ALJ, considering both opinions on the whole and all

718.304–718.306. Mr. Liebel died after March 1, 1978 and was not diagnosed in a manner that meets any of the standards that entitle a miner to a presumption.

of the clinical evidence, determined that Liebel failed to meet her burden of proving that Mr. Liebel's death was hastened by pneumoconiosis.

The Board affirmed the ALJ's denial. Liebel filed a timely Notice of Appeal.

## II. JURISDICTION and STANDARD OF REVIEW

The Board had jurisdiction over the appeal from the ALJ's decision under 33 U.S.C. § 921(b)(3). We have jurisdiction over this petition for review under section 422(a) of the BLBA, which incorporates section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (2000).

We review the Board's decision for errors of law and to assure the Court that the Board adhered to its scope of review. Mancia v. Dir., OWCP, 130 F.3d 579, 584 (3d Cir. 1997). "We exercise plenary review over the ALJ's legal conclusions that were adopted by the Board." Hill v. Dir., OWCP, 562 F.3d 264, 268 (3d Cir. 2009) (citing Soubik v. Dir., OWCP, 366 F.3d 226, 233 (3d Cir. 2004)). The Board was required to accept the ALJ's findings of fact if supported by substantial evidence. 33 U.S.C. § 921(b)(3), as incorporated by 30 U.S.C. § 932(a).

"In reviewing the Board's decision, we must independently review the record and decide whether the ALJ's findings are rational, consistent with applicable law and supported by substantial evidence on the record considered as a whole." Hill, 562 F.3d at 268 (citing Mancia, 130 F.3d at 584). The substantial evidence standard requires such evidence "as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted).

# III. ANALYSIS

Liebel is only entitled to benefits if she can prove, by a preponderance of the evidence, that Mr. Liebel's death was due to pneumoconiosis. 20 C.F.R. § 718.205(c)(4) (2000); Dir., OWCP v. Greenwich Collieries, 512 U.S. 267, 277–78, 280–81 (1994) (noting that a benefits claimant loses "when the evidence is evenly balanced"). Liebel must establish the presence of pneumoconiosis and demonstrate that the disease at least hastened his death. See Lukosevicz v. Dir., OWCP, 888 F.2d 1001, 1004–06 (3d Cir. 1989).

Due to the absence of documentary evidence of clinical pneumoconiosis in the record, this appeal turns on the ALJ's analysis of competing expert medical opinions. We note at the onset that "[t]he ALJ has broad discretion to determine the weight accorded each doctor's opinion." Balsavage v. Dir., OWCP, 295 F.3d 390, 396 (3d Cir. 2002). The "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." Id. (quoting Mancia, 130 F.3d at 588). "In weighing medical evidence to evaluate the reasoning and credibility of a medical expert, however, the ALJ may not exercise absolute discretion to credit and discredit the expert's medical evidence." Mancia, 130 F.3d at 588. The ALJ should reject any conclusory medical opinion that contradicts objective clinical evidence. Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986).

The ALJ provided specific reasons for selecting Dr. Fino's opinion: Dr. Fino's opinion was well-reasoned and was consistent with objective medical evidence. The ALJ appropriately exercised his discretion by according greater weight to Dr. Fino's opinion that pneumoconiosis did not significantly contribute to Mr. Liebel's death. Based on our independent review of the record, we conclude that the ALJ's decision was supported by substantial evidence and not contrary to the law. The ALJ thoroughly evaluated all of the relevant evidence in concluding that pneumoconiosis was not a substantial contributing cause of Mr. Liebel's death. The Board properly deferred to these findings.

Liebel insists that Dr. Wald's deposition testimony establishes the presence of pneumoconiosis and the fact that it hastened Mr. Liebel's death. Liebel contends that the ALJ should have deemed this testimony uncontradicted because Dr. Fino's testimony "should be stricken as hostile to the Act." (Appellant's Br. 19.) Specifically, Liebel contends that Dr. Fino's opinion constitutes a "philosophical" opinion that the Director has previously rejected—that coal dust produces a de minimis effect on breathing. (Id. at 14–15.) She further argues that Dr. Fino's testimony relies on the absence of x-ray evidence in contradiction to regulations of the BLBA. The medical opinions that Dr. Fino expressed, and which are documented in the record, are not hostile to the Act. After independently reviewing the record, we resolutely disagree with Liebel's characterization of Dr. Fino's medical opinion.[2]

---

[2] For example, according to Liebel, Dr. Fino "stated he did not believe exposure to coal dust causes disabling obstruction." (Pet'r's Br. 5 (citing App. 132–33.)) In the portions of the record that Liebel cited, however, Dr. Fino makes no such statement. Instead, Dr.

7

The ALJ was within his discretion to accord greater weight to Dr. Fino's opinion and properly concluded that Liebel failed to meet her burden to prove Mr. Liebel's death was hastened by pneumoconiosis.

## IV. CONCLUSION

For the reasons set forth above, we will deny Liebel's petition for review of an order of the Board.

---

Fino states that coal dust exposure can contribute to lung disease, and he clarifies that the manner in which coal dust exposure contributes is in an additive manner, not in an aggravating manner. (App. 132–33.) Additionally, Liebel mischaracterizes a number of Dr. Fino's opinions as general, absolute rules when they were, instead, opinions limited to Mr. Liebel. For instance, Dr. Fino stated that Mr. Liebel "died due to lung cancer, which was due to smoking. Coal mine dust played absolutely no role in his death." (Id. at 14.) Liebel mischaracterizes this opinion of Dr. Fino to be that Dr. Fino "doesn't believe the disease can be causally connected to non-respiratory death." (Pet'r's Br. 14.)